862 F.2d 869
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Pamela Denise GARY, Plaintiff-Appellant,
v.
PROFESSIONAL DIVISION, ALBERTO-CULVER COMPANY aka t/a
Alberto-Culver, Defendant-Appellee,
 No. 87-3863.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 6, 1988.
Decided: Nov. 23, 1988.
 
 John T. Jessee, Frank K. Friedman (E. Dale Burruss, Woods, Rogers & Hazlegrove, on brief), for appellant.
 John Franklin III (Taylor & Walker, P.C., on brief), for appellee.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and RICHARD L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 The plaintiff in this case, Pamela Gary, appeals from a jury verdict for the defendant in her product liability suit. Though Ms. Gary raises numerous objections to the trial court's evidentiary rulings and jury instructions, the narrow question on this in forma pauperis appeal is whether Ms. Gary should be provided a transcript of the trial proceedings at government expense.
 
 
 2
 * Gary was a welder at Norfolk Naval Shipyard in Portsmouth, Virginia. While she was welding on January 31, 1986, a spark apparently flew under her safety mask and ignited her hair, causing severe injury. She sued the appellee, Alberto-Culver Company, which manufactured a hair care product known as "TCB Curl Activator with Glycerin" ("TCB"). Gary had used TCB on her hair that morning. She claimed that TCB was dangerously defective in its chemical makeup (alleged to be petroleum-based with alcohol), and that Alberto-Culver had breached express and implied warranties and its duty to warn that the product was flammable. Alberto-Culver defended on the grounds of contributory negligence and assumption of risk, arguing that Gary had failed adequately to shield her hair, and that the spark ignited her hair, not the TCB.
 
 
 3
 Gary lists several errors that she contends contributed to the jury's verdict for Alberto-Culver. First, she argues that contributory negligence is no defense to a warranty claim and that the trial court permitted a verdict based on assumption of risk even though she was not properly warned of TCB's combustibility. Second, Gary objects to four evidentiary rulings excluding her evidence as irrelevant. She argues that to press these claims on appeal she needs a transcript of the trial.
 
 II
 A.
 
 4
 In addition to transcripts in certain criminal cases, 28 U.S.C. Sec. 753(f) provides that fees for transcripts in in forma pauperis appeals shall be paid by the United States "if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)."
 
 
 5
 Initially, there is some dispute as to what constitutes a "substantial" question. The leading case, Ortiz v. Greyhound Corp., 192 F.Supp. 903, 905 (D.Md.1959), defines it as "reasonably debatable," but also urges the trial judge not to certify a substantial question unless the case presents a "new principle of law to be applied to the facts." Whatever the value of the "new principle" standard where a litigant raises purely legal claims, it is inappropriate where, as here, the party alleges that the trial court erred in its evidentiary rulings. If the "new principle" standard were uniformly applied regardless of the claim, no transcript would ever be available in cases challenging evidentiary rulings, no matter how egregious the error. Such claims challenge not a legal principle but the specific, fact-based application of a principle to the evidence presented. A "new principle of law" is never presented, and thus the standard is inappropriate. Therefore, we believe that Gary is entitled to a transcript, at least on her evidentiary claims, if she can show that her claims are not frivolous but "reasonably debatable." This lesser burden is also appropriate because "[d]oubts about the substantiality of the questions on appeal and the need for a transcript to explore them should be resolved in favor of the petitioner." Lee v. Habib, 424 F.2d 891, 905 (D.C.Cir.1970).
 
 
 6
 Even with this clarification, the inquiry can become circular: we arguably need to see the transcript to decide whether the appellant is entitled to one. In the words of Learned Hand, "we could not adequately decide the motion until after we had granted it." Jaffe v. United States, 246 F.2d 760, 762 (2d Cir.1957).[1] We avoid this dilemma by focusing on the merits of the claim, not what happened at trial. The proper question is whether the appellant has a "reasonably debatable" claim independently of the parties' conflicting memories of the trial. If the plaintiff's claim lacks merit even if the trial occurred as she states, then provision of a transcript would be futile because even if she is correct about trial events she cannot prevail. On the other hand, if the validity of her claim turns only on what happened at trial, then the merits of the claim are debatable and under the statute she is entitled to a transcript to resolve the preliminary dispute. Otherwise, the only factor that renders her claims frivolous would be her inability to prove what happened at trial, the very problem the statute was designed to correct.
 
 B.
 
 7
 On three of the four evidentiary rulings, Alberto-Culver does not argue that Gary's claims are frivolous, but only that "Appellant's recollection of the actual events during the trial are [sic] incorrect." Brief of Appellee at 8-9. We hold that Gary has raised substantial questions on these three claims.
 
 
 8
 First, Gary claims that the trial court improperly excluded evidence of prior burn-related injuries from TCB, which she claims would have demonstrated Alberto-Culver's knowledge of the problem and its duty to warn. Instead of arguing that such evidence would have been irrelevant, Alberto-Culver argues only that the issue was fully explored in the plaintiff's cross-examination of its expert. The adequacy of plaintiff's cross-examination obviously cannot be reviewed without a transcript. Though the merits of Gary's claims are not before us, we note that several cases in this Circuit have held such evidence admissible. See, e.g., Gardner v. Q.H.S., Inc., 448 F.2d 238 (4th Cir.1971); Spruill v. Boyle-Midway, Inc., 308 F.2d 79 (4th Cir.1962). If Gary's cross-examination of the appellee's expert was in fact deficient, an issue that only a transcript can resolve, then she has a reasonably debatable claim.
 
 
 9
 Similarly, Gary argues that the trial court should have admitted evidence that similar products, unlike TCB, contained warnings about flammability. Alberto-Culver responds only that Gary failed to lay an adequate foundation for its introduction. The parties again argue about what happened at trial instead of the merits of the claim. If the appropriate foundation was laid, Gary has a reasonably debatable claim that industry custom was relevant evidence.
 
 
 10
 Next, Gary claims her chemical expert was not permitted to testify concerning his TCB test results, which allegedly would have demonstrated that TCB is highly flammable. The appellee claims the expert testified extensively on the subject. This Court held in Gardner, 448 F.2d at 244, that flammability tests are admissible, so again Gary's claim is at least "reasonably debatable" if the transcript bears out her version of the expert's testimony.
 
 
 11
 Gary claims finally that the trial court should have permitted testimony that the Norfolk Naval Shipyard adopted safety procedures after the incident that, among other things, prohibited workers from wearing hair gels while welding. In contrast to the above three claims, the dispute here focuses not on what happened at trial but the merits of the claim: Gary claims the remedial measures[2] were relevant to her claim that she did not assume the risk but followed established safety procedures, and Alberto-Culver insists the evidence is irrelevant because not based on any tests or independent examination of the product. Here we do not need the transcript, for the issue is clearly drawn without reference to trial events. We find that Gary's claim here is not "reasonably debatable." The Shipyard's actions, taken after the incident occurred and not based on any reliable information, were both irrelevant to the precautions taken by Gary and prejudicial. This claim is frivolous because regardless of what the transcript might reveal, she cannot prevail.
 
 C.
 
 12
 Gary also argues that the trial court improperly permitted the jury to consider contributory negligence as a defense to her warranty claim and to make the inconsistent finding that Gary assumed the risk but was not adequately warned. It was easy to determine that these two claims did not present substantial questions because Alberto-Culver produced a transcript.[3] The trial court specifically instructed the jury that "[c]ontributory negligence of the plaintiff is not a defense to a breach of implied warranty," Transcript at 12, and did not instruct the jury at all on assumption of risk. These claims are therefore frivolous, and this portion of the transcript need not be provided to Gary.
 
 
 13
 For the foregoing reasons, we order the preparation of a partial transcript at government expense covering the cross-examination of August Fiebig, Jr.; those portions in which appellant allegedly laid a foundation for the introduction of other products' warnings; and the testimony of the appellant's expert chemist.
 
 
 14
 GRANTED IN PART, AND DENIED IN PART.
 
 CHAPMAN, Circuit Judge, dissenting:
 
 15
 I find myself in disagreement with the majority, even though the majority would require the furnishing of only certain portions of the transcript to the appellant at the expense of the United States. This disagreement is based upon the requirement of 28 U.S.C. Sec. 753(f) which provides:
 
 
 16
 Fees for transcripts furnished in other proceedings to persons permitted to appeal in forma pauperis shall be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question).
 
 
 17
 Under this language the test is whether a substantial question is presented by the appeal. Although the statute allows a circuit judge to certify that there is a substantial question, I would feel more comfortable with a certificate from the judge who had actually tried the case.
 
 
 18
 I do not see a substantial question presented in the present appeal. If we make a substantial question of evidentiary rulings in a products liability case arising under our diversity jurisdiction, I cannot imagine a question that would not be substantial. I do not believe that it was the intent of Congress to have federal courts providing free transcripts, or substantial portions thereof, in this type of case.
 
 
 19
 The appellant has had her day in court. She was represented in the district court by retained counsel and the case was presented to and decided by a jury. The attorneys, who represented the appellant at the trial, are not the attorneys presenting the present appeal, and this says more about the insubstantial nature of the appeal than the briefs and oral arguments. Her trial attorneys were obviously handling the case on a contingent fee basis, and they do not have enough confidence in the appeal to invest any additional time or money to pursue it.
 
 
 20
 The strongest argument supporting the American system of contingent fees for plaintiff's attorneys is that such an arrangement allows impecunious persons to present their cases and have their day in court. The refusal of the trial attorneys to proceed further and to make additional advances is an excellent expression of the insubstantial questions presented in the present case. Such action by the trial attorneys should answer the question, but if it does not, a look at the allegations of error should. These alleged errors primarily relate to evidentiary rulings made by the trial judge. This is an area in which the trial judge has considerable discretion. These rulings were not unusual and even a reversal of the district court will not result in a change or clarification of the law.
 
 
 21
 The majority opinion cites Ortiz v. Greyhound Corp., 192 F.Supp. 903, 906 (D.Md.1959), but this opinion also cautions about the expense of furnishing such transcripts:
 
 
 22
 Of course such a fund is by no means unlimited in amount and I would suppose that therefore considerable care should be exercised by the trial judge in certifying as to the existence of a substantial question on appeal in a civil case of this nature which presents no very unusual situation or new principle of law to be applied to the facts.
 
 
 23
 Id. at 906. The majority also cite Lee v. Habib, 424 F.2d 891, 905 (D.C.Cir.1970) as indicating that doubts about substantiality questions on appeal should be resolved in favor of petitioner. However, immediately following the language quoted in the majority opinion, the Lee court states:
 
 
 24
 In like manner we expect that the judges will give due consideration to motions for transcripts in cases where the law appears to be settled, but where the appellant is able to show that his chances of changing the law on appeal are strong.
 
 
 25
 I do not see any opportunity for the appellant in the present case to change the applicable law. The appeal simply presents questions of the trial judge's discretion in making certain rulings regarding the admissibility of evidence, the examination of certain witnesses and one of the jury instructions. These are not substantial questions as required by the statute, and they do not present an opportunity to change the law. Therefore, I would affirm.
 
 
 
 [1]
 The statute grants concurrent jurisdiction to courts of appeals and district courts, but the inevitable guesswork by the former could be substantially avoided if litigants first raised the issue before the district judge, whose recollection of the trial alleviates the need for a written record
 
 
 [2]
 These actions are not subject to the bar on subsequent remedial measures imposed by Fed.R.Evid. 407, since they were not taken by a party
 
 
 [3]
 For future guidance, it would appear to be the better practice for an appellee to provide relevant portions of the transcript to avoid guesswork and fragmented litigation